UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMYRION HUTCHERSON                                      PLAINTIFF

VS.                          CIVIL ACTION NO. 3:17CV907TSL-RHW

SIEMENS INDUSTRY, INC.,                                  DEFENDANTS
TERRY STEEN, BRIAN BALMES AND
CORALEE KELLY

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant
Siemens Industry, Inc. (Siemens), Terry Steen, Brian Balmes and
Coralee Kelly, to dismiss the amended complaint[1] of pro se
plaintiff Jermyrion Hutcherson, pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure. Plaintiff has responded in
opposition to the motion and the court, having considered the
complaint and the parties' memoranda, concludes that the motion
should be granted in part and denied in part, as set forth herein.

Plaintiff, who is African American, was employed by defendant
Siemens from 2007 until his termination on February 16, 2017.
Following his termination, he filed the present action alleging
that Siemens violated his rights under Title VII of the Civil
Rights Act, 42 U.S.C. § 2000e et seq., and the Americans With
Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. The complaint
also purports to assert an intentional infliction of emotional

---

[1] On April 4, 2018, the court denied defendants' motions
to dismiss the original complaint and granted plaintiff leave to
amend his complaint to state his best case.

distress claim against the individual defendants and a wrongful termination claim against Siemens. His claims are grounded in the following alleged facts.

Plaintiff's Factual Allegations

During the first seven years of his employment, plaintiff worked as a senior material administrator at Siemens' Richland, Mississippi site. During this time, he applied for more than fourteen promotions which resulted in three phone interviews for positions at other facilities but no offers; and he was never offered an opportunity to interview at the Richland site. In November 2014, he applied for the newly-created Training Coordinator position. After the hiring manager, Joel Mathewson, returned plaintiff's resume to him, telling plaintiff he was not qualified for the position, plaintiff lodged a complaint of discrimination with the human resources manager. An investigation ensued, which found evidence to support plaintiff's claim. As a way to resolve the claim, Mathewson offered to promote plaintiff to the position of contract administrator in the circuit breaker group. Plaintiff accepted and began work in this position in December 2014.

Soon thereafter, Mathewson, in retaliation for plaintiff's having complained of discrimination, undertook a campaign of retaliation designed to force plaintiff to resign. This included, for example, providing plaintiff with only minimal training and

failing to equip him with the essential tools (a laptop, remote access and company cell phone) needed to perform his new job. Mathewson's alleged retaliation campaign lasted for more than a year. Eventually, in March 2016, shortly after he was issued a reprimand by Mathewson for missing important e-mails, plaintiff was demoted and reassigned to work as a contract administrator in the surge arrestor group. That group was managed by defendant Brian Balmes, who appointed defendant Coralee Kelly to serve as "team lead" for a newly-assembled collective of contract administrators, which included plaintiff.

Kelly was resentful of the fact that in December 2014, plaintiff had been given the position of Contract Administrator-Circuit Breaker Group. She had openly opposed the decision to hire him following the internal investigation of his discrimination complaint, and she complained to co-workers that the position was "rightfully hers." Thus, when plaintiff became part of the surge arrestor group, Kelly, along with Balmes, undertook a retaliation campaign against him in an effort to have him terminated or force him to resign. As part of this alleged campaign, Balmes gave Kelly full access to plaintiff's work email account. Kelly used this access to manipulate (which included deleting some of) his emails to make it appear as though he was failing to handle his work. Kelly, in turn, generated and provided to Balmes false weekly reports which reflected that

plaintiff was not keeping up with his emails. Balmes did not attempt to verify the reports or give plaintiff an opportunity to disprove them; instead, he accepted them at face value. In a further effort to force him to resign, Kelly started a false rumor that plaintiff, who had a compromised immune system from previous episodes of shingles, was faking his illness. And Kelly, along with Balmes, began to disproportionately assign tasks to plaintiff in an attempt to overwhelm him so that he would fail and be terminated or would give up and resign. In this regard, Kelly delegated some of her circuit breaker production line duties to him, which usually took him about one full day a week to perform. He complained to Balmes. However, Balmes offered no relief. Kelly and Balmes piled on even more work, requiring plaintiff to take on, in addition to his own job duties, the duties of a full-time logistic position which had been eliminated. This additional work often took more than five hours of his work day, leaving him insufficient time to complete his contract administrator tasks.

Eventually, plaintiff complained to human resources manager Terry Steen that Balmes' and Kelly's actions were creating a hostile work environment and causing him elevated levels of stress and anxiety. Steen did not investigate but rather merely reported the complaint to Balmes and Kelly. On September 21, 2016, just days after he complained to Steen, Balmes placed plaintiff on a performance improvement plan (PIP). Under the terms of the PIP,

4

plaintiff was required to meet with Balmes and Steen every other week.  In these meetings, Balmes, over plaintiff's objection, continued to rely on the allegedly fabricated reports submitted by Kelly.  To no avail, plaintiff complained to Steen that the objectives of the PIP were not consistent with the actual (extra) work he was performing and asked Steen to investigate.  Later, however, after plaintiff became upset during a November 22, 2016 PIP meeting, Steen suggested that "it would be best if Balmes hired a full-time customer care representative to perform the logistic function" and told plaintiff to focus solely on his contract administrator work.

Soon after, in early December 2016, Kelly approached plaintiff and screamed at plaintiff in front of his coworkers, accusing him of "just wanting someone else to do his work." Plaintiff complained to Steen about the incident, and also about Kelly's mistreatment of him in general, which included her willingness to help the white ladies in the group but not him. Steen conducted a "sham investigation", following which he advised that Siemens would not be taking action against Kelly.

In late December 2016, Balmes gave plaintiff a negative performance review based on Kelly's reports, and as a result, plaintiff was denied a pay raise.  Toward the end of December and into January, plaintiff's health continued to decline as a result of the unrelenting retaliation he was subjected to at work, and in

mid-January, he was required to undergo immediate surgery to remove inflamed digestive tract tissue. When he tried to return to work on February 9, 2017 following his surgery, Balmes refused to sign his doctor's order for restricted duty and sent him home. When he returned for work a week later, he was summoned to meet with Balmes and Steen, who advised he was terminated based on Kelly's continuing reports of his poor performance.

Following his termination, plaintiff filed the present action asserting claims under Title VII for race discrimination based on the denial of promotions from 2007 to 2014, his demotion in March 2016, the December 2016 denial of a raise and his termination in February 2017; and for retaliation on account of his December 2014 complaint relating to Siemens' allegedly discriminatory hiring practices. He further asserts claims under the ADA for failure to accommodate his disability at some unspecified time while under the supervision of Balmes and Kelly and upon his initial attempt to return to work in February 2017, and also for failure to engage in the ADA's interactive process. Lastly, he asserts a state law claim of intentional infliction of emotional distress against defendants Steen, Balmes and Kelly.

### Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted, the complaint "does not need detailed factual allegations," but it

must provide the plaintiff's grounds for entitlement to relief, including factual allegations that when assumed to be true "raise a right to relief above the speculative level." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir. 2007) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). While a plaintiff asserting Title VII and/or ADA claims is not required to submit evidence to establish a *prima facie* case of discrimination or retaliation at the motion to dismiss stage, he is required "to plead sufficient facts on all of the ultimate elements of [his Title VII or ADA claim] to make his case plausible." <u>Chhim v. Univ. of Texas at Austin</u>, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam), <u>reh'g denied</u> (Oct. 14, 2016), <u>cert. denied</u>, --- U.S. ----, 137 S. Ct. 1339, 197 L. Ed. 2d 529 (2017), <u>reh'g denied</u>, --- U.S. ----, 137 S. Ct. 2182, 198 L. Ed. 2d 248 (2017).

<u>Title VII: Race Discrimination</u>

Title VII prohibits employers from taking adverse employment actions against employees on the basis of race. <u>See</u> 42 U.S.C. § 2000e-2(a)(1) (making it "an unlawful employment practice for an employer ... to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race"). "A plaintiff alleging workplace discrimination must exhaust his administrative remedies before he may sue under ... Title VII...." <u>Castro v. Texas Dept. of Criminal Justice</u>, 541 Fed. Appx. 374, 379 (5th Cir. 2013). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378-79 (5th Cir. 2002). For a claim based on discrete employment actions, such as termination, demotion, failure to promote, denial of transfer, or refusal to hire, this means the party must file his claim "within 180 days of the occurrence of such act or lose the ability to recovery for it, since a discrete act will have 'occurred' on the day that it 'happened'." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); <u>Perez v. Brown</u>, 207 F.3d 657 (5th Cir. 2000).

Plaintiff's complaint reflects that he filed his first and only EEOC charge on February 23, 2017. According to Siemens, it follows that any discrete acts that pre-dated August 27, 2016 are barred for failure to exhaust. This includes his claims for alleged race discrimination based on the denial of promotions from 2007 to 2014 and his March 2016 demotion. In his complaint, and in response to defendants' motion, plaintiff submits that these claims are timely under either or both of two theories. First, he

argues that his claims are timely based on the continuing violation doctrine. The continuing violation doctrine "relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." Messer v. Meno, 130 F.3d 130, 134–35 (5th Cir. 1997). "If the plaintiff can demonstrate that the discrimination manifested itself over time rather than in a series of discrete acts, actions that would otherwise be time-barred may be considered by the court." Mack v. John L. Wortham & Son, L.P., 541 F. App'x 348, 355 (5th Cir. 2013). The continuing violation doctrine does not apply to the acts at issue here, failure to promote and demotion, which, as a matter of law, are discrete acts. See id. (recognizing that demotion and failure to promote are discrete events that should put an employee on notice that a cause of action has accrued) (citations omitted).

Citing Fentress v. Potter, No. 09 C 2231, 2012 WL 1577504 (N.D. Ill. May 4, 2012), plaintiff further argues that his claim is timely under a recognized exception to the exhaustion requirement for situations where "the alleged discrimination consists of retaliation for the very act of having filed a [complaint of discrimination] in the first instance." The Fentress case cited by plaintiff recognized that "an exception to the exhaustion rule provides that 'a separate administrative

charge is not prerequisite to a suit complaining about retaliation for filing the first charge.'" Id. (quoting Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989)).  The Fifth Circuit has also recognized this exception.  See Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981) (recognizing exception that allows a plaintiff to proceed in district court on an unexhausted retaliation claim if that claim is alleging retaliation for properly bringing an exhausted claim before the district court). However, even assuming this is a viable exception,[2] it only applies in a limited context to excuse exhaustion of retaliation, not discrimination, claims.  See Sapp v. Potter, 413 Fed. Appx. 750, 752-53 (5th Cir. 2011) ("Because the Gupta exception is premised on avoiding procedural technicalities, it has only been applied to retaliation claims alone....").  It has no applicability to plaintiff's discrimination claims in this case.[3]

---

[2]     The Fifth Circuit has questioned but not decided whether this exception has been abolished or narrowed in light of the Supreme Court's decision in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).  See Sapp v. Potter, 413 F. App'x 750, 753 n.2 (5th Cir. 2011).

[3]     Neither does it apply to his claim of retaliation relating to Mathewson, all of which pre-dated August 27, 2016.  In this regard, the court notes that in addition to allegations of retaliation by Kelly, addressed infra pp. 5-16, plaintiff has alleged that from December 2014 until he was demoted in March 2016, he was subjected to retaliation by Mathewson for having complained to Siemens in December 2014 about alleged race discrimination.  Had plaintiff filed an EEOC charge in December 2014 alleging race discrimination rather than an internal complaint with the company, then he would not have been required

Plaintiff did exhaust his claims that he was denied a pay increase in December 2016 and terminated in February 2017 because of his race. However, Siemens contends he has not sufficiently pled these claims. The Fifth Circuit has held that in determining whether a plaintiff has pled sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible, "it can be helpful to reference the McDonnell Douglas framework, on which [a plaintiff] would continue to rely if he based his claim on circumstantial evidence, and under which [the plaintiff] would ultimately have to show that" (1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was treated less favorably that a similarly situated employee outside the protected class under nearly identical circumstances.[4] Chimm, 836 F.3d at 470; Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360 (5th Cir. 2004) (citing Okoye v. Univ. of Texas Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th Cir. 2001)). See also Lee v. Kansas City

---

to file a separate EEOC charge complaining about Mathewson's retaliation as a prerequisite to a Title VII claim in court based on the retaliation by Mathewson. The initial charge, which was the impetus for the retaliation that followed, would have satisfied his exhaustion requirement as to both the alleged discrimination and retaliation. However, plaintiff did not file a timely EEOC charge relating either to the alleged failures to promote or to Mathewson's alleged retaliation.

[4] The McDonnell Douglas framework applies where a plaintiff lacks direct evidence of discrimination. Plaintiff does not allege that he has such direct evidence.

S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009) (setting forth elements of *prima facie* case).

Siemens acknowledges plaintiff was a member of a protected class and that he suffered adverse employment actions in being denied a pay raise and terminated. It argues, though, that not only has plaintiff failed to allege that he was qualified for his position but that in fact, the facts he has alleged show that he was not qualified. It further asserts that plaintiff has failed to allege facts that would support a finding that any similarly situated employee was treated more favorably.

With reference to plaintiff's qualifications, Siemens argues that because plaintiff has alleged that he "found it impossible" to complete his assigned work and "felt ill prepared" for the job, then he has effectively admitted he was not qualified for the position. The court is not persuaded. Plaintiff's complaint cannot reasonably be read as suggesting that plaintiff considered himself unqualified for his position as contract administrator in the surge protector group. On the contrary, he clearly alleges he was qualified for the position by both education and experience. He does allege that he had difficulty with the work assigned to him; but it is clear that these allegations relate not to his relative qualification for the position but rather to his charge that Kelly and Balmes placed, extraneous, "extraordinary and unreasonable work demands" on him.

The court also rejects Siemens' argument that plaintiff has failed to identify any similarly situated employee who was treated more favorably under nearly identical circumstances. In evaluating whether another employee was treated differently under "nearly identical circumstances", the court considers such factors as whether the employee held the same position or had similar responsibilities, whether he had the same supervisor, and whether he had a similar history of misconduct as the plaintiff. See Lee, 574 F.3d at 259-60. Employees are not considered "similarly situated" where differences between their situations account for the different treatment they received. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001).

Here, plaintiff alleges that he and Robin East both were contract administrators and were supervised by Kelly and Balmes. He alleges that while he was offered virtually no training for the contract administrator position, having been given only one and a half weeks of training, Kelly spent two months personally training East for the job. Further, he alleges that while East also had a documented history of missing important emails, Kelly never asked for or was given access to East's work email account. And although East was also placed on a PIP for allegedly missing emails and not keeping up with her work, Siemens denied his requests for help but "took all steps reasonabl[y] and necessary to preserve East's employment," including providing her additional

13

resources.  Finally, he alleges that while he was terminated
outright for his alleged poor performance, East, though also
"recommended for termination because she did not meet the PIP's
requirements," East, unlike him, was not terminated but was
allowed to stay on the job and resign "at a time of her own
choosing", thus enabling her to "[leave] the company gracefully
with her career and dignity intact."[5]  In the court's opinion,
plaintiff has adequately alleged that East was similarly situated
and yet treated more favorably by Siemens.[6]

Under the McDonnell Douglas framework, once an employee has
made out a *prima facie* case, an inference of intentional
discrimination is raised and the burden of production shifts to
the employer, who must offer an alternative non-discriminatory
explanation for the adverse employment action.  If the employer
provides a legitimate nondiscriminatory explanation, the inference
of discrimination drops out and the burden shifts back to the
employee to demonstrate that the employer's explanation is merely
a pretext for racial bias.  Lee v. Kansas City S. Ry. Co., 574
F.3d 253, 259 (5th Cir. 2009).

---

[5]     Siemens' assertion that plaintiff has alleged that East
was also terminated is not an accurate representation of the
allegations of the complaint.

[6]     Given this conclusion, the court need not consider for
purposes of the present motion whether plaintiff's allegations
would support a finding that Jennifer Barlow was also a
comparator.

Siemens argues that even if the court concludes that plaintiff has adequately alleged a *prima facie* case of race discrimination, plaintiff's complaint should be dismissed because he has failed to allege facts tending to show that Siemens' alleged putative reason for his termination, i.e., poor work performance, was pretext for discrimination. Siemens' position in this regard is unfounded. Plaintiff has sufficiently pleaded pretext as he has alleged that both the negative review which caused him to be denied a pay raise and his subsequent termination were based on fabricated and untrue reports indicating that his performance with respect to significant aspects of his job was deficient.

For the foregoing reasons, Siemens' motion to dismiss plaintiff's claim for race discrimination based on allegations of failure to promote and demotion will be granted as those claims are time-barred. The claims for race discrimination based on allegations of plaintiff's being denied a pay raise and then being terminated will be denied.

<u>Retaliation</u>

Title VII prohibits retaliation against employees who engage in protected conduct, which includes complaining to one's employer about alleged discrimination. <u>See</u> <u>Stone v. Louisiana Dep't of Revenue</u>, 590 F. App'x 332, 341 (5th Cir. 2014) (citing <u>Perez v. Region 20 Educ. Serv. Ctr.</u>, 307 F.3d 318, 325 (5th Cir. 2002)).

"To state a claim for retaliation in violation of Title VII, the plaintiff must allege that her employer took an adverse employment action against her in retaliation for engaging in protected activity."  Id.  Plaintiff herein does allege that he engaged in protected activity.  He also alleges that he suffered an adverse employment action: he was overloaded with work, much of which consisted of duties that were not part of his actual job; his email account was manipulated and performance reports were fabricated to make it appear that he was failing to perform the duties of his position; he was then placed on a PIP, given a negative review, denied a pay raise and ultimately fired, ostensibly for poor performance based on fabricated reports.  And he alleges that all of this was part of a campaign of retaliation against him led by Kelly.  According to the complaint, however, Kelly retaliated against him, not because he engaged in protected activity, but rather because she was upset that in December 2014, he was given the contract administrator-circuit breaker group, a position she felt was "rightfully hers."  Despite this, plaintiff insists he has a viable Title VII retaliation claim based on what he contends is a direct causal connection between his protected activity in 2014 and the retaliation he suffered while under Kelly's charge.  In this regard, he reasons that since Kelly retaliated against him for taking the contract administrator-circuit breaker group job, and since Mathewson hired him for the

contract administrator-circuit breaker group only because he,
plaintiff, had complained to Siemens about race discrimination,
then it follows that Kelly retaliated against him because he
complained of race discrimination.  Plaintiff's position is
patently without merit and is rejected.  Kelly, according to the
complaint, did not retaliate against him *because* he complained of
race discrimination but rather *because* he took a job she thought
should have been hers.  His retaliation claim will therefore be
dismissed.[7]

ADA claims:

In his complaint, plaintiff alleges that defendants violated
the ADA by failing to reasonably accommodate his disability.[8]  The
ADA prohibits covered employers from "discriminat[ing] against a
qualified individual on the basis of disability." 42 U.S.C.
§ 12112(a).  Discrimination includes failure to make "reasonable
accommodations to the known physical or mental limitations of an
otherwise qualified individual with a disability ... unless such
covered entity can demonstrate that the accommodation would impose

---

[7]    As noted *supra* p. 10 n.3, any retaliation claim based on
Mathewson's actions, the last of which occurred at the time of
plaintiff's demotion in March 2016, is time-barred.

[8]    Although it appears he may be suggesting otherwise in
his response to defendants' motion, plaintiff does not allege
anywhere in his complaint that any adverse action was taken
against him because of his alleged disability.  Rather, his ADA
claim, as alleged in the complaint, is based solely on a failure
to accommodate theory.

an undue hardship." Id. § 12112(b)(5)(A). "[O]nce an employee

has made a request for an accommodation, it may be necessary for

the employer to initiate an informal, interactive process with the

qualified individual with a disability ... in order to craft a

reasonable accommodation." Molden v. E. Baton Rouge Parish Sch.

Bd., 715 Fed. Appx. 310, 315-16 (5th Cir. 2017) (quotation marks

omitted). "[A]n employer violates the ADA when the employer's

unwillingness to engage in a good faith interactive process *leads*

*to* a failure to reasonably accommodate an employee." Id. at 316

(quotation marks omitted).

To state a claim for failure to accommodate, plaintiff must

allege facts to show that (1) he is a "qualified individual with a

disability;" (2) the disability and its consequential limitations

were "known" by the covered employer; and (3) the employer failed

to make "reasonable accommodations" for such known limitations.

Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.,

730 F.3d 450, 452 (5th Cir. 2013). The Fifth Circuit has

explained that

> "[f]or purposes of proving ADA discrimination, it is
> important to distinguish between an employer's knowledge
> of an employee's disability versus an employer's
> knowledge of any limitations experienced by the employee
> as a result of that disability. This distinction is
> important because the ADA requires employers to
> reasonably accommodate limitations, not disabilities."
> Taylor v. Principal Financial Group, Inc., 93 F.3d 155,
> 164 (5th Cir. 1996). Furthermore, the ADA does not
> require an employer to assume that an employee with a
> disability suffers from a limitation; as a result, it is

18

incumbent upon the ADA plaintiff to assert not only a
disability, but also any limitation resulting therefrom.
See id.

Gammage v. W. Jasper Sch. Bd. of Educ., 179 F.3d 952, 955 (5th

Cir. 1999). See also Ortiz-Martinez v. Fresenius Health Partners,

PR, LLC, 853 F.3d 599, 605 (1st Cir. 2017) (plaintiff must

identify "what specific accommodations [he] needed and how those

accommodations were connected to [his] ability to work.").

In the case at bar, plaintiff alleges that he is a "qualified

individual with a disability" under the ADA as a result of having

been previously diagnosed with Shingles, which left him with a

"compromised immune system" that makes him "particularly

susceptible to stress and anxiety". And he alleges that

"[e]levated levels of stress and anxiety can trigger physical

manifestations not limited to severe headaches, severe stomach

trauma, anxiety attacks, or even additional bouts of Shingles."

Plaintiff also states that defendants were aware of his condition

and resulting limitations as he disclosed these matters to

defendants at various times throughout his employment. And, he

alleges that he made reasonable requests for accommodations which

defendants refused. Specifically, he alleges that in the Fall of

2016, when he was overwhelmed by the workload and Kelly's

malicious actions toward him and his health was suffering as a

result of the stress he was under, he went to Balmes and Steen and

requested a "fair distribution of the work load and curbing the

19

hostile work environment." He alleges that Siemens "intentionally ignored" his request and "failed to engage in the interactive process"[9] and thereby violated the ADA's reasonable accommodation mandate.

For purposes of its motion, Siemens assumes that plaintiff is a qualified individual with a disability and acknowledges plaintiff's allegation that he requested "reasonable accommodations." Siemens submits, however, that plaintiff has not stated a cognizable claim for failure to accommodate since he does not allege that the accommodation he requested "was related to any alleged disability and in no way indicates that he faced any work-related limitations because of his alleged disability." That is, he does not allege either that Siemens was aware of any work-related *limitations* connected to plaintiff's disability or that the accommodations he requested were related to any such

---

[9]    The court acknowledges plaintiff's allegation that Siemens failed to engage in the interactive process, but would point out that there is no separate cause of action for failure to engage in an interactive process. See Eubank v. Lockhart Indep. Sch. Dist., 229 F. Supp. 3d 552, 560 (W.D. Tex. 2017), *aff'd*, 734 F. App'x 295 (5th Cir. 2018) (stating that "the ADA creates a cause of action for failure to accommodate, not for failure to engage in an interactive process alone) (citations omitted). See Griffin v. UPS, Inc., 661 F.3d 216, 224 (5th Cir. 2011) ("[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA.").

limitations.  Plaintiff's complaint could certainly be more clear on this point.  In the court's opinion, however, plaintiff's complaint can fairly be read as alleging the requisite connection, and at least implicitly Siemens' knowledge of a connection between the limitations related to his disability.  Accordingly, the court concludes that plaintiff has stated a claim for violation of his right to reasonable accommodation under the ADA.[10]

Wrongful Termination

Plaintiff, though acknowledging in his complaint that he is an at-will employee, has undertaken to state a claim for wrongful termination under state law based on Siemens' alleged termination of his employment in violation of Title VII.  As a matter of law, this does not state a claim for relief.  See Peques v. Mississippi State Veterans Home, No. 315CV00121MPMJMV, 2017 WL 3298684, at *5 (N.D. Miss. Aug. 2, 2017) ("the discriminatory motives in hiring and firing which are made unlawful by federal anti-discrimination law are generally not unlawful under Mississippi's employment at-will scheme.").

---

[10]    In addition to his failure-to-accommodate claim relating to the accommodations requested in the Fall of 2016, plaintiff has undertaken to assert a claim for failure-to-accommodate based on its refusal to allow him to return to work following surgery on February 9, 2017.  Defendants' motion does not address this putative claim.

Intentional Infliction of Emotional Distress

Hutcherson alleges that defendants Steen, Balmes and Kelly are liable for intentional infliction of emotional distress under state law.  To prevail on a claim for intentional infliction of emotional distress, the challenged conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.  Starks v. City of Fayette, 911 So. 2d 1030, 1036 (Miss. Ct. App. 2005) (citing Diamondhead Country Club and Property Owners Ass'n., Inc. v. Montjoy, 820 So.2d 676, 684 (Miss. Ct. App. 2000)).  The Mississippi Supreme Court has observed that "[a] claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes."  Id. (citing Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So. 2d 845, 850 (Miss. 2001)).  Defendants assert that plaintiff's allegations concern "mere employment disputes," and do not allege sufficiently outrageous conduct on the part of any of the defendants.  In the court's opinion, defendants are correct as to plaintiff's allegations against Balmes and Steen.  However, as to Kelly, plaintiff has alleged that she engaged in a malicious and calculated campaign of harassment designed to get him to quit or be fired, which included deleting his emails; fabricating reports and making unfounded charges of performance deficiencies; starting a rumor that he was faking his illness; and yelling at him in front of co-workers.  These allegations go beyond what could

22

reasonably be characterized as a "mere employment dispute" and are
more in the nature of a "pattern of deliberate, repeated
harassment over a period of time." See Peques v. Emerson Elec.
Co., 913 F. Supp. 976, 982-83 (N.D. Miss. 1996) ("'Recognition of
a cause of action for intentional infliction of emotional distress
in a workplace environment has usually been limited to cases
involving a pattern of deliberate, repeated harassment over a
period of time.'") (quoting White v. Monsanto Co., 585 So. 2d
1205, 1210 (La. 1991)). Accordingly, the motion to dismiss this
claim will be granted as to Balmes and Steen but denied as to
Kelly.

Conclusion

Based on the foregoing, it is ordered that defendants' motion
to dismiss is granted as to: (1) plaintiff's race discrimination
claims based on failure to promote and his demotion; (2) his
retaliation claims; (3) his state law claim for wrongful
termination; and (4) his claims for intentional infliction of
emotional distress against Steen and Balmes. It is further
ordered that the motion is denied as to: (1) plaintiff's claim
for race discrimination arising out of his denial of a pay
increase and termination; (2) his ADA claims premised on Siemens'
alleged failure to accommodate; and (3) his intentional infliction
of emotional distress claim against Kelly. Finally, it is

ordered that defendants' unopposed motion to strike plaintiff's

surrebuttal is granted.

SO ORDERED this 24th day of September, 2018.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE