UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERMYRION HUTCHERSON                                    PLAINTIFF

VS.                                CIVIL ACTION NO. 3:17CV907TSL-RHW

SIEMENS INDUSTRY, INC.,                                DEFENDANTS
TERRY STEEN, BRIAN BALMES AND
CORALEE KELLY


MEMORANDUM OPINION AND ORDER

This cause is before the court on the separate motions of

defendants Siemens Industry, Inc. and Coralee Kelly for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  Pro se plaintiff Jermyrion Hutcherson has responded

in opposition to the motions and the court, having considered

the memoranda of authorities, together with attachments,

submitted by the parties, concludes that Siemens' motion should

be granted in part and denied in part, as set forth herein, and

that Kelly's motion should be denied.

Plaintiff was employed by defendant Siemens from 2007 until

his termination on February 16, 2017, ostensibly for poor

attendance and poor job performance.  In the present action, he

alleges that Siemens denied him a pay raise in December 2016 and

then terminated his employment in February 2017 because of his

African-American race, in violation of Title VII of the Civil

Rights Act, 42 U.S.C. § 2000e *et seq.* He further alleges that he has a disability resulting from being HIV-positive and/or from having a propensity for severe headaches/nerve pain from the shingles virus, and that Siemens violated his rights under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* by failing to accommodate his disabilities. Lastly, he asserts a state law cause of action against the defendant Coralee Kelly for intentional infliction of emotional distress.[1] Both defendants separately seek summary judgment as to the claims asserted against them.

Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant makes a showing that

---

[1] The claims identified in the text are those that remain following the court's dismissal of additional putative claims that were included in plaintiff's amended complaint. See Hutcherson v. Seimens Indus., Inc., No. 3:17CV907TSL-RHW, 2018 WL 4571908, at *1 (S.D. Miss. Sept. 24, 2018).

there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56.

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. See Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. Anderson, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. Id. at 250.


DEFENDANT SEIMENS' MOTION:

ADA – Failure to Accommodate

Title I of the ADA prohibits an employer from discriminating against a qualified individual on the basis of a disability. Calderone v. TARC, 640 F. App'x 363, 366 (5th Cir. 2016) (citing 42 U.S.C. § 12112(a)). Discrimination under the Act includes refusing to make reasonable accommodations to the

known physical or mental limitations of a qualified individual. Id. (citing 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure to accommodate claim, a plaintiff must prove: "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." Molden v. E. Baton Rouge Par. Sch. Bd., 715 F. App'x 310, 315 (5th Cir. 2017) (quoting Feist v. La. Dep't of Justice, 730 F.3d 450, 452 (5th Cir. 2013)).

Plaintiff herein contends he is a "qualified individual with a disability" based on two different medical conditions for which he requested but was denied accommodations. The first is neuralgic pain, which he contends manifests primarily as severe headaches and which he asserts is attributable to severe outbreaks of shingles he experienced in 2009 and in 2014. Although he has not had another shingles outbreak since 2014, he asserts that at times, particularly when he is under stress, he still has severe, disabling pain. Plaintiff alleges that in the Fall of 2016, he requested and yet Siemens failed to accommodate this disability by taking steps to lessen the stress on him, specifically by more fairly distributing the workload and curbing the alleged hostile work environment created primarily by defendant Kelly.

4

By memorandum opinion and order of September 24, 2018, this court concluded that these allegations stated a cognizable failure-to-accommodate claim.[2]  Siemens now purports to move for summary judgment on all plaintiff's ADA claim(s) for failure to accommodate, but its motion cannot fairly be read as seeking summary judgment on this specific alleged failure to accommodate as the motion does not so much as mention or acknowledge this claim.  Instead, Siemens' motion identifies and addresses three specific occasions – not including this one – when Siemens allegedly denied a request for accommodation, namely, (1) in December 2014, when his then-supervisor Joel Mathewson denied his request for FMLA leave; (2) in March 2016, when his supervisor Brian Balmes denied his request for FMLA leave; and (3) in February 2017, when Siemens refused to allow him to return to work following a period of FMLA leave.

With respect to his alleged requests for leave in December 2014 and March 2016, plaintiff has explained in deposition testimony that he was diagnosed as HIV-positive in 2009.  And while he never disclosed this diagnosis to anyone at Siemens, he claims that he informed his supervisors, first Mathewson and later Balmes, that he had a "serious medical condition" that would require him to take leave from time to time and that for

---

[2]     See Hutcherson, 2018 WL 4571908, at *7.

5

this reason, he needed to apply for intermittent FMLA leave. According to plaintiff, neither requested further information regarding the nature of his "serious medical condition" or his need for leave related to the condition, and both responded that FMLA leave was not necessary and that he could instead use his accrued paid time off (PTO). However, in February 2017, Siemens terminated his employment, citing as one of its reasons his poor attendance.[3]

Siemens argues in its motion that plaintiff's claim relating to this alleged failure to accommodate is barred as a matter of law because it was not included in or encompassed by his February 23, 2017 charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In the court's opinion, this position is unfounded. To bring a claim in court under the ADA, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC that identifies the employment practices he is challenging. Owens v. Dallas Cty. Cmty. Coll. Dist., No. 19-10037, 2019 WL 6726163, at *2 (5th Cir. Dec. 10, 2019) (citations omitted). To determine whether a

---

[3]    In his deposition, plaintiff referred in passing to Mathewson's having denied a request for FMLA leave; he did not make clear whether he was asserting that alleged denial as a basis for any alleged claim in this lawsuit for failure to accommodate. He clearly identified Balmes' denial of FMLA leave as a basis for such claim herein. The court, for present purposes, considers that his failure-to-accommodate claim also includes Mathewson's alleged denial of FMLA leave).

claim has been exhausted, the court must "construe the EEOC charge in its broadest reasonable sense and ask whether the claim can reasonably be expected to grow out of the charge of discrimination." Davenport v. Edward D. Jones & Co., L.P., 891 F.3d 162, 167 (5th Cir. 2018) (quotation omitted). The lawsuit "can include only those allegations that are like or related to those allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission." Id. Thus, to determine what claims have been exhausted, the court engages "in a fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006) (citation omitted). In the case at bar, plaintiff asserted in his EEOC charge that he believed that Siemens had violated his rights under the ADA. And while he did not include any facts in the charge itself relating to any failure to allow him time off for his medical condition, in the reply he filed with the EEOC addressing Siemens' response to his charge, he stated explicitly that he "had multiple discussions with management regarding my illness (without full disclosure); that he had "multiple discussions with both Brian Balmes and Joel Mathewson (previous manager) regarding the need for FMLA status. I was assured by both managers that FMLA status was not

necessary"; and that "Brian Balmes later recanted and sought to use my medical absences as grounds for dismissal." Plaintiff clearly exhausted his administrative remedies with respect to this claim.

Siemens, for purposes of the present motion, does not dispute that plaintiff, based on his diagnosis as HIV-positive, was a "qualified individual with a disability". It submits, though, that because plaintiff admittedly never informed Siemens of his HIV diagnosis, then his disability was not "known" by Siemens. However, Siemens does not deny that plaintiff informed Mathewson and Balmes that he had a "serious medical condition" for which he needed an accommodation. Neither does Siemens dispute that both supervisors volunteered an accommodation without further inquiry. In the court's opinion, on this summary judgment record, Siemens has not established as a matter of law that plaintiff's disability was not adequately "known" by Siemens so as to give rise to potential liability for failure to accommodate. Cf. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999) ("What matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.").

Siemens also argues that it is entitled to summary judgment on the merits of this claim because the undisputed record evidence establishes that it did, in fact, accommodate plaintiff's alleged disability by allowing him to use PTO for leave necessitated by his medical condition(s).  That is, both Mathewson and Hutcherson made clear to plaintiff that he could have time off and use his accrued PTO when he had to miss work due to sickness of any kind.  See 29 C.F.R. pt. 1630, app. (2016) (explaining that "other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment.").  Plaintiff does not dispute this.  But his claim is not that Siemens failed to *agree* to accommodate his disability, but rather that it failed to *actually* accommodate his disability because, despite having agreed that he could use accrued PTO to take leave when needed for his medical condition, in the end, it terminated him for taking that leave.  To this, Siemens responds that it is clear from the record that his termination "arose from his use of PTO for *non-disability-related* tardies and absences (and for not providing sufficient notice – and in some cases no notice – of the same)."  In the court's opinion, however, this is not clear from the record.  There is, in fact, so far as the court can discern, no record evidence to this effect.

In support of its position on this issue, Siemens directs the court to (1) e-mails from plaintiff to Balmes on three separate dates in March 2016, sent at or after the time plaintiff was scheduled to be at work, in which he stated he would be late and either gave no reason or a reason unrelated to any illness; and (2) a three-page single-spaced list, apparently derived primarily from text messages from plaintiff to Balmes, setting forth dates and times plaintiff was late or absent from work, and stating when (and whether) notice was provided and what, if any, reason was given.  According to Siemens, these exhibits indicate that the majority of plaintiff's tardies and absences were due to non-health-related reasons.

Siemens has offered no evidence of what bearing, if any, the absences or tardies reflected by the referenced e-mails – which predated plaintiff's termination by nearly a year – had on his termination.  Moreover, the list cited by Siemens – the source of which appears to have been Brian Balmes - does not indicate, as claimed by Siemens, that the majority of plaintiff's tardies or absences were non-health-related.  Of the approximately fifty-six entries on that list, only sixteen are clearly non-health-related.  Twenty-two are clearly health-related, and the remaining eighteen reflect absences or tardies for which no reason was provided.  And plaintiff has testified that while he did use accrued PTO to take care of personal

matters, most of his tardies and absences were necessitated by his serious medical condition.  Furthermore, Siemens has offered no evidence to establish that leave time plaintiff took for medical reasons (all of which he has asserted related to his serious medical condition) did not motivate its decision to terminate his employment.  Particularly, as the court must construe the evidence in the light most favorable to the plaintiff, the court concludes that Siemens' motion for summary judgment on this claim cannot be granted.  See Equal Employment Opportunity Comm'n v. AccentCare Inc., No. 3:15-CV-3157-D, 2017 WL 2691240, at *10 (N.D. Tex. June 21, 2017) (denying summary judgment because the trier of fact might find that, had the employer reasonably accommodated the employee's disability, she would not have been terminated when she was for the reason she was).  Summary judgment will be denied as to this claim.

Plaintiff has purported to assert a claim for failure to accommodate based on Siemens' refusal to allow him to return to work in February 2017 after a period of FMLA leave.  In this regard, plaintiff explains that on February 9, 2017, when he tried to return to work after having been on FMLA leave for several weeks to undergo and recover from surgery to remove anal condylomas, Balmes refused to let him return to work, ostensibly because he had not complied with a company policy that required the development and company approval of a return-to-work plan in

cases where an employee's medical provider has released him to return to work with restrictions. Siemens maintains that it is entitled to summary judgment on this claim based on evidence of plaintiff's non-compliance with its return-to-work policy. Plaintiff, though, insists that he did comply with the policy.

There does appear to be a disputed issue of fact as to whether plaintiff had complied with Siemens' return-to-work policy prior to reporting for work on February 9, 2017. However, the undisputed record evidence establishes that on January 20, well prior to plaintiff's initial attempt to return to work on February 9, Siemens had already made and finalized its decision to terminate plaintiff's employment, so that immediately upon plaintiff's return to work on February 16, after Siemens concluded that he had complied with its return-to-work policy, plaintiff was informed that his employment was terminated. Given Siemens' decision to terminate plaintiff's employment, there was no accommodation to be made as plaintiff was no longer to be employed by Siemens. This begs the question why Siemens, having already made the decision to terminate plaintiff's employment before he first tried to resume work on February 9, 2017, rather than terminating him on that date, made him go through the process of securing authorization to return to work. But whatever the reason, the fact remains, there was

nothing for Siemens to accommodate.  For this reason,
plaintiff's claim on this theory fails as a matter of law.

### Title VII – Race Discrimination

Plaintiff alleges that Siemens violated Title VII of the
Civil Rights Act denying him a pay raise in December 2016 and
then terminating his employment in February 2017 because of his
African-American race.  Title VII makes it an "unlawful
employment practice for an employer to … discharge any
individual, or otherwise to discriminate against any individual
with respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's race…."
42 U.S.C. § 2000e-2(a)(1).  To establish a *prima facie* case of
discrimination, the plaintiff must either present direct
evidence of discrimination or, in the absence of direct
evidence, rely on circumstantial evidence using the McDonnell
Douglas burden-shifting analysis.  Under that framework, the
plaintiff has the burden of first establishing a *prima facie*
case of intentional discrimination with proof to establish each
of the following:  "(1) he is a member of a protected class; (2)
he was qualified for the job; (3) he suffered an adverse
employment action; and (4) he was treated less favorably than a
similarly-situated employee outside the protected class under
nearly identical circumstances or, in the case of termination,

was replaced by someone outside the protected class.  <u>Bryan v.</u>
<u>McKinsey & Co., Inc.</u>, 375 F.3d 358, 360 (5th Cir. 2004) (citing
<u>Okoye v. Univ. of Texas Houston Health Sci. Ctr.</u>, 245 F.3d 507,
512 (5th Cir. 2001).  If he satisfies this burden, the employer
must then articulate a legitimate, nondiscriminatory reason for
the challenged adverse employment action.  <u>Tex. Dep't of Cmty.</u>
<u>Afairs v. Burdine</u>, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed.
2d 207 (1981).  If the employer sustains its burden, the *prima*
*facie* case dissolves, and the burden shifts back to the
plaintiff to establish that the employer's proffered reason is a
pretext for discrimination.

Siemens argues that it is entitled to summary judgment
because plaintiff cannot establish a *prima facie* case of race
discrimination.  More particularly, it argues that in the face
of undisputed evidence of his poor performance and his chronic
tardiness and absenteeism, plaintiff cannot establish that he
was qualified for the position.  It further contends that he has
failed to demonstrate that he was treated less favorably than
any similarly-situated individual outside his protected class.[4]

Regarding plaintiff's alleged poor attendance, as discussed
at length <u>supra</u>, plaintiff has presented evidence that his

---

[4]    Siemens also asserts that plaintiff's replacement following
his termination was African American.  Plaintiff does not
dispute this.

absences were authorized by his supervisors and/or in keeping with Siemens' leave policy.  That evidence forecloses a conclusion that, as a matter of law, he was not qualified for the position.  As for his alleged poor performance, the Fifth Circuit held in <u>Berquist v. Washington Mutual Bank</u>, 500 F.3d 344 (5th Cir. 2007), that a plaintiff who "possessed the same job qualifications when [he was] terminated as when [he was] assigned" to the position at issue was not required to show that his performance met the employer's expectations to establish a *prima facie* case.  <u>Id.</u> at 350-51.  "Evidence that [the plaintiff's] supervisors were not pleased with his performance," the court held, "does not prove a lack of qualifications at the *prima facie* stage."  <u>Id.</u>  <u>See</u> <u>also</u> <u>Bienkowski v. Am. Airlines, Inc.,</u> 851 F.2d 1503, 1506 (5th Cir. 1988) (holding that " a plaintiff challenging his termination or demotion can ordinarily establish a *prima facie* case of … discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action.  The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for … discrimination."); <u>Cristadoro v. Sally Beauty Supply LLC</u>, No. 1:11CV55-SA-DAS, 2012 WL 1715120, at *4 n.7 (N.D. Miss. May 14, 2012) (noting that "there is a difference between "qualifications" and "performance"— a difference between possessing the minimal

qualifications necessary for the job and utilizing those minimal qualifications to perform in [a] manner that the employer deems satisfactory.").

To prove the fourth element of his prima facie case, plaintiff has the burden to prove that he was treated more harshly than a comparator employee under "nearly identical circumstances." See Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) ("[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances'."). Plaintiff has identified as a comparator Robin East, another contract administrator who, like him, was placed on a performance improvement plan, allegedly because of similar alleged performance deficiencies. But according to plaintiff, East, unlike him, was offered assistance and training to help her succeed in improving her performance so that she would be able to keep her job, whereas he, on the other hand, was offered no such help. He further asserts that when East's performance did not improve, despite Siemens' efforts to help her, Siemens allowed her to resign on a date of her choosing, while he was terminated outright. The evidence does not support plaintiff's position in this regard. Rather, the evidence shows that East tendered her resignation one day after she was placed on the performance improvement plan. Thus, to the extent that

plaintiff and East may have been similarly situated before being placed on their respective performance improvement plans, they were not thereafter similarly situated in that East chose to resign; plaintiff did not. Plaintiff thus cannot establish a *prima facie* case of race discrimination and Siemens is entitled to summary judgment on this claim.

The court would add that despite having pled a cause of action for race discrimination, plaintiff, in his deposition, did not mention his race or race as a possible motive for the challenged employment actions. Rather, he claimed, repeatedly and consistently, that he believed he was denied a pay raise and terminated because "Kelly, in her retaliation campaign to have me terminated or fired or removed from my position, gave and presented Mr. Balmes fabricated information on a number of occasions." When asked if he believed there were any other reasons, or was that "the reason," he responded, "I can see no other reasons why." He did not claim that Kelly's motivation had anything to do with his race; rather it was strictly because she was angry because he had gotten the position that she felt was hers.

<u>DEFENDANT KELLY'S MOTION</u>

In addition to his claims against Siemens, plaintiff has asserted a cause of action against defendant Kelly for intentional infliction of emotional distress. To sustain a claim of intentional infliction of emotional distress, the defendants' conduct must be wanton and willful, as well as evoke outrage or revulsion. <u>Speed v. Scott</u>, 787 So.2d 626, 630 (Miss. 2001). The severity of the acts should be such that they are atrocious and intolerable in a civilized society. Id. Meeting the requirements is a "tall order." <u>Id</u>. The liability does not extend to "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." <u>Pegues v. Emerson Elec. Co.</u>, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (quoting Restatement 2d of Torts § 46 cmt. d). "A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." <u>Id.</u>; <u>Lee v. Golden Triangle Planning & Dev. Dist., Inc.</u>, 797 So.2d 845, 851 (Miss. 2001). Viable claims for intentional infliction of emotional distress in a workplace environment usually are "limited to cases involving a pattern of deliberate, repeated harassment over a period of time." <u>Pegues</u>, 913 F. Supp. at 982–83; <u>Lee</u>, 797 So.2d at 851. <u>See</u> <u>Collins v. City of Newton</u>, 240 So. 3d 1211, 1220 (Miss. 2018), <u>reh'g denied</u> (May 10, 2018).

Plaintiff contends that defendant Kelly, who held the position of contract administrator-arrestor group, was upset when he was offered and accepted the position of contract administrator-circuit breaker. (This was perceived as the most prestigious of the contract administrator positions). He claimed that Kelly had been nice to him when the two of them had previously worked together under the same supervisor, but once he got the job as contract administrator-circuit breaker, she began giving him "looks" and when she was in his presence, she appeared "very agitated, irritated" with him. And he heard that she had complained to others in the office that she should have been offered the job. Plaintiff also perceived (from Kelly's "body language") that she was not happy about having been asked to assist with training him for a position that she felt she should have had; and, while she did provide some training, in his view, she did not provide the level of assistance he felt was needed so he had to seek assistance from another contract administrator.

Plaintiff further described a verbal altercation in which Kelly yelled at him – or more accurately, they yelled at each other (or as he put it, spoke to each other in "elevated voices"). And he asserts that Kelly once "started a rumor" that he was faking an illness to get out of work and so that she

would have to do his work.[5]  Clearly, none of this rises to the

level of severity required to sustain a claim for intentional

infliction of emotional distress.  <u>See</u> <u>Jenkins v. City of</u>

<u>Grenada, Miss.</u>, 813 F. Supp. 443, 447 (N.D. Miss. 1993)

("Although [defendant's] treatment of plaintiff may have been

nervewracking, upsetting, and even improper, no reasonable juror

could conclude that it rose to the heightened level of extreme

and outrageous." (internal quotations and citation omitted)).

Eventually, in March 2016, Siemens switched plaintiff's and

Kelly's positions;[6] Kelly became contract administrator-circuit

breaker and plaintiff was moved to the arrester position.  Once

in the circuit breaker position, Balmes assigned Kelly as "team

leader" of the four contract administrators, with some authority

monitor and report on their performance.  Plaintiff asserts that

Kelly continued to harbor animosity toward him for taking her

job in the first place and that once given this authority, she

set out to discredit him and force him to quit or be fired.

This primarily involved her accessing his email account and

deleting emails – mostly customers' purchase orders – and

reporting to his supervisor, Balmes, that he was failing to

---

[5]  Plaintiff's description of Kelly's alleged actions suggests
more that she was grousing about having to do work that she felt
was rightfully plaintiff's responsibility.

[6]  This was done for the ostensible reason that plaintiff was
having difficulty performing the circuit breaker position.

respond to these emails and ignoring purchase orders. In other words, she tried to set him up to fail. Plaintiff maintained in his deposition that he knew his emails were being deleted; and he explained how he knew this. He also explained why he suspected Kelly was the culprit; but he admitted that he never personally witnessed Kelly access his email account or delete any emails. He did, however, present testimony of a co-worker, Adria Jones, in which she stated, in direct contradiction to Kelly's denial, that on no fewer than five occasions, she saw Kelly sitting at plaintiff's computer and rearranging his emails and deleting emails.

Siemens notes that because Kelly, after taking over plaintiff's former position as contract administrator for the circuit breaker group, was necessarily responsible for the workload he had been carrying, she needed and was given access to his email account so she could be sure she was covering the workload and not missing any orders. It further notes that Jones, though claiming to have seen Kelly delete emails from plaintiff's inbox, acknowledged that she did not know which or how many of his emails Kelly allegedly deleted or manipulated. She thus has no knowledge as to whether the e-mails she claims Kelly allegedly deleted or moved from Hutcherson's inbox were in fact e-mails related to the circuit breaker operation – which Kelly was solely in charge of overseeing at that point in time –

or e-mails relating to plaintiff's arrestor-based workload. Siemens thus argues that Jones' testimony – even if true – in no way indicates that Kelly deleted any emails she was not supposed to be reviewing and re-categorizing in her new role, let alone that she deleted any emails with malice or an intent to disrupt plaintiff's employment in any way.

Given Jones' testimony, the court must accept for purposes of the present motion that Kelly did, in fact, delete emails from plaintiff's email account. While there may well be a plausible explanation for why she would have done so, Kelly has offered no explanation for such actions; rather she has denied that this even occurred. Plaintiff clearly has no direct evidence to prove his theory that Kelly's actions were undertaken maliciously, pursuant to a nefarious, vengeful plot against him for stealing her job. And, of course, the law is clear that speculation and conjecture are never enough to sustain a claim. See Allstate Ins. Co. v. Receivable Fin. Co., 501 F.3d 398, 405 (5th Cir. 2007)("Although we draw inferences favorable to the verdict, such inferences must be reasonable and may not rest upon speculation and conjecture only.")(internal quotations omitted). In the court's view, however, the evidence is arguably sufficient to support an inference that Kelly acted maliciously and willfully to inflict emotional distress.

Therefore, although a close question is presented, the court is of the opinion that summary judgment should be denied.[7]

Conclusion

Based on the foregoing, it is ordered that defendant Seimens' motion is granted as to plaintiff's claims for race discrimination and denied as to his failure-to-accommodate claims.  It is further ordered that defendant Kelly's motion is denied.

SO ORDERED this 3rd day of March, 2020.


                         /s/ Tom S. Lee_____
                         UNITED STATES DISTRICT JUDGE

---

[7]   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986)("Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").